UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

APRIL MILLER,                              )
                                           )
            Plaintiff,                     )
                                           )
     vs.                                   )   04 C 6076
                                           )
RIVER OAKS LINCOLN-MERCURY, INC.,          )
                                           )
            Defendant.                     )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motion of Defendant River Oaks Lincoln-Mercury, Inc. ("River Oaks") for summary judgment in its favor on the complaint of Plaintiff April Miller. For the reasons set forth below, the motion is denied.

## BACKGROUND

River Oaks is a Lincoln-Mercury dealership that sells both new and used cars to consumers. In September 2003, Miller went to River Oaks in response to a coupon she received in the mail. It stated that she was approved to purchase a car if she presented documents such as a driver's license, proof of residency, and a utility bill.

Once at River Oaks, Miller spoke with a saleswoman named Bridget Powell. After looking at several different models, Miller settled on a 1997 Ford Taurus. She provided information for a credit application and signed a retail installment contract for the car. The contract specified that Miller would trade in her current car, a Saturn, for a $500 credit toward the purchase price. She also signed a contract rider, which stated that "[t]he parties intend that this contract will be assigned by [River Oaks] to a sales finance agency of [River Oaks'] choice."

According to Miller, before she left the dealership, she asked Powell if she had financing for the car. Powell responded that Miller would not be able to leave the lot in the Taurus if she wasn't financed. Miller left her Saturn at River Oaks and departed in the Taurus.

River Oaks then submitted Miller's application to several potential creditors. Each notified River Oaks that they would not extend credit to Miller, but apparently only one notified Miller herself. About one month after Miller's first visit to the dealership, she was contacted by River Oaks and informed that her financing had not gone through. She returned to the dealership, and the parties executed another sales contract. For this one, River Oaks increased the trade-in allowance to $1000 but now required Miller to pay a $600 down payment. Because Miller did not have $600 to pay,

she provided River Oaks with two postdated checks for the amount. By October 24, Miller returned with a combination of cash and money orders totaling $600.

Over the ensuing three weeks, Miller had some phone contact with River Oaks employees. On November 10, 2003, River Oaks sent Miller a letter at her home address stating that she would be reported as having stolen the car if she did not return it to the dealership within 48 hours of receiving the letter. It also stated that Miller had been informed that she could not receive financing for the car. When she received the letter, Miller forwarded it to her counsel and informed River Oaks that any further attempts to communicate with her would need to be directed to her attorney.

Despite the breakdown in the parties' relations, River Oaks continued to seek financing on Miller's behalf and ultimately succeeded in doing so in May 2004, seven months after the execution of the second sales contract. At this time, Miller still retained possession of the Taurus. On September 17, 2004, Miller filed the instant suit, alleging violations of the Equal Credit Opportunity Act ("ECOA") and the Illinois Consumer Fraud Act ("ICFA") as well as common-law fraud.

River Oaks apparently had made good on its threat to report the Taurus as stolen, because Miller was arrested for possession of a stolen vehicle during a traffic stop shortly after the complaint was filed. The police returned the Taurus to River Oaks, whereupon River Oaks returned Miller's Saturn and $600 down payment to her.

The parties have completed discovery, and River Oaks now moves for summary judgment on all counts of the complaint.¹

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence

---

¹ Although the parties initially indicated to the court that they would be filing cross-motions for summary judgment, Miller has filed only a response to River Oaks' motion. Though she makes a fleeting comment at the end of her brief that she is the one entitled to summary judgment, we will not accept such an off-hand remark as a substitute for a properly prepared and supported motion.

is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). With these principles in mind, we consider the instant motion.

## DISCUSSION

### A. ECOA Claim

The ECOA places certain obligations on creditors, a group defined to include persons who regularly arrange for the extension, renewal, or continuation of credit. 15 U.S.C. § 1691a(e). Under the ECOA, an adverse action occurs with respect to a credit applicant when credit is denied or revoked, when the terms of an existing credit arrangement change, or when a creditor refuses to grant credit in substantially the amount or according to the terms requested by the credit applicant. 15 U.S.C. § 1691(d)(6). When adverse action is taken against a credit applicant, the creditor must provide the applicant with a statement of reasons why the action occurred. 15 U.S.C. § 1691(d)(2). Unless the creditor acts on fewer than 150 credit applications per year, the statement must be in writing. 15 U.S.C. § 1691(d)(2), (5). Failure to comply with these requirements exposes the creditor to liability for actual as well as punitive damages. 15 U.S.C. § 1691e(a), (b).

It is undisputed in this case that Miller was twice denied credit with respect to her purchase of the Taurus. It is similarly undisputed that River Oaks did not provide her with a written statement of reasons why she was denied credit. River Oaks contends that, because it forwarded Miller's credit request to other parties, it was not a creditor within the meaning of the ECOA. As a result, it argues, it had no legal duty to supply Miller with the reasons for the denials. River Oaks concedes that it may have participated in the credit decision made with respect to the second sales contract, thus bringing it within the scope of the ECOA's definition of "creditor." See Treadway v. Gateway Chevrolet Oldsmobile, Inc., 362 F.3d 971, 979-80 (7th Cir. 2004); 12 C.F.R. § 202.2(l). However, they insist that the eventual extension of credit to Miller in May 2004 precludes Miller from asserting that she experienced an adverse action in connection with that contract.

The arguments River Oaks advances ignores the fact that the ECOA defines status as a "creditor" by what a party does in the ordinary course of its business, not whether it participated in an isolated transaction or not. 12 C.F.R. § 202.2(l). River Oaks has supplied the court with information only as to how it handled Miller's situation, but the scope of inquiry we must undertake to determine its legal obligations under the ECOA must be broader than that. As a result, River Oaks may very well have been a creditor for purposes of the ECOA during the operative time period. As

a result, we cannot say that as a matter of law that River Oaks had no duty to inform Miller of the specific reasons why her credit application was denied, and summary judgment is thus not appropriate.

**B. Common Law Fraud and Illinois Consumer Fraud Act Claims**

To make out a claim for common law fraud in Illinois, a plaintiff must show that a defendant made a false statement of material fact that the defendant knew or believed to be false; that the plaintiff had a right to, and did, rely on the statement; that the defendant made the statement to induce the plaintiff to act; and that the plaintiff's reliance on the statement led to injury. See Siegel v. Levy Organization Development Co., Inc., 607 N.E.2d 194, 198 (Ill. 1992). Miller has alleged and provided evidence of each of these elements. As the Illinois Supreme Court noted in Siegel, the nature of the statutory cause of action is such that conduct establishing a common law cause of action will also allow relief under the statute as long as it was done in the course of trade or commerce. See id. Clearly, a purchase of a car is squarely within the realm of commerce. As a result, Miller's evidence applies just as much to her ICFA claim.

River Oaks contends that Miller's claims must fail because she has not provided evidence that anyone at River Oaks represented to her that she had obtained or would receive financing for the purchase of the Taurus. In response, Miller points to the statement she alleges Powell made during her September 2003 visit to the car lot.

River Oaks argues that we cannot consider Powell's words because they are hearsay and therefore inadmissible, but their objection is not well taken. Fed. R. Evid. 801(d)(2)(D) specifically states that a statement made by a party's servant concerning a matter within the scope of the employment made during the existence of the relationship is not hearsay. Thus, Powell's alleged statement is not inadmissible on grounds of hearsay, and Miller's testimony that it was made is sufficient to create a material issue of fact with respect to her fraud claims. While we express no opinion as to whether Miller's account will ultimately carry the day, it is sufficient to preclude summary judgment in favor of River Oaks.

## CONCLUSION

Based on the foregoing, the motion of River Oaks for summary judgment in its favor is denied.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated:    September 19, 2005